(No. 3330—

PATRICK J. DUIGNAN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 25, 1947.*

VICTOR N. CARDOSI, for claimant.

GEORGE F. BARRETT, Attorney General and WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

DAMRON, J.

The complaint was filed November 10, 1938; hearing completed on December 3, 1946 and the transcript filed on December 31, 1946.

No jurisdictional questions are involved. It is stipulated that the claimant and respondent were governed by and operating under the Workmen's Compensation Act and that the accidental injuries arose out of, and in the course of claimant's employment.

The complaint asks that claimant be awarded (1) such compensation for permanent disabilities as the evidence may show he is entitled to receive under the provisions of the Workmen's Compensation Act, and (2) reimbursement of $357.02 expenses paid and incurred for medical, surgical and hospital treatment at the Mayo Clinic, Rochester, Minnesota; transportation expense to and from claimant's home to Rochester and $39.52 expenses of eight trips to the Illinois Research Hospital.

The record discloses that claimant, Patrick J. Duignan, on November 12, 1937 was employed by the Department of Public Welfare as an attendant at Manteno State Hospital. His wages were $52.50 per month, plus maintenance—the value of which is $24.00 per month.

While watching patients standing in the supper line, claimant was struck and knocked down, without warning, by a patient. He immediately reported to the hospital at the institution where he received emergency first-aid attention and was confined to bed. An x-ray examination revealed claimant had a fracture of the left zygomatic process. He returned to work about a week later and on December 13, 1937 was admitted to the Illinois Research Hospital having been referred there by the officials at Manteno. X-rays disclosed fracture of the left malar bone with downward displacement of the lower orbital ridge whereupon an operation was performed exposing the zygomatic arch, the arch was lifted by instrumentation and the wound closed. He was discharged on December 22, the hospital report stating, "that while the depression had not been completely removed, yet his appearance was much improved."

Claimant testified he was unable to work following the last operation owing to severe pain in his head.

He was absent from work about three weeks and then

returned and worked another three weeks. He could not recall whether he worked from that time until he went to Rochester in August of the following year. He had been left with a large depression on the left side of his face and in an effort to correct this disfigurement in August 1938, he went to the Mayo Clinic in Rochester where an operation was performed which failed to eliminate the disfigurement.

After leaving the State's employ in January 1938, he requested Dr. Hinton to provide further medical treatment but was merely told that he had been discharged by the Illinois Research Hospital.

He went into business with his father in 1938 but could not recall whether it was before or after going to Rochester. In 1940 he enlisted in the Canadian Army serving three and a half years and then joined the United States Armed Forces where he served in the infantry. No evidence was offered by claimant as to his present occupation or earnings.

It is obvious from this somewhat detailed statement of all the evidence that the record is insufficient to show that claimant has sustained either temporary total, or permanent partial, disability for which he is entitled to any compensation. Any award given for such disability would necessarily rest upon mere speculation, surmise or conjecture and therefore must be denied. *Cross* vs. *State,* 13 C. C. R. 174 at 178.

The proof is also entirely too vague to establish claimant's right to reimbursement for the surgical, hospital and other expenses he incurred in connection with his treatments at Rochester, Minnesota or to dispel the reasonable inference that claimant voluntarily elected to obtain these services at his own expense.

Having been referred to the Illinois Research Hos-

pital for further treatment by his superiors at Manteno he is clearly entitled to reimbursement of the $39.52 transportation expense for the eight trips he was required to make to that institution.

In addition to the above claims resolved as aforesaid, claimant also seeks compensation for the serious and permanent disfigurement to his face. The record, based upon the Commissioner's observation of claimant, described that disfigurement as an indented puckered scar of purplish discoloration approximately 2½ inches long, extending under the orbit of the left eye from the hair line to a point immediately under the pupil of the eye, with a marked depression of the left cheek toward the upper line of the jaw. This disfigurement having remained in this condition for over nine years, there is no good reason to assume there will be any improvement in claimant's condition.

Claimant having suffered disfigurement as a direct result of an accidental injury which arose out of, and in the course of, his employment, he is entitled to an award.

The Commissioner on the basis of his observation recommends that claimant be awarded compensation under Section 8(c) in the sum of $485.65 computed at the rate of $8.83 (claimant's weekly compensation rate on the basis of $918.00 annual earnings including maintenance) for a period of 55 weeks.

An award is hereby entered in favor of claimant in the sum of Five Hundred Twenty Five Dollars Seventeen Cents ($525.17) which includes $39.52 transportation expenses incurred in connection with medical and hospital treatment at Illinois Research Hospital and $485.65 under Section 8(c) of the Workmen's Compensation Act, as amended, for serious and permanent facial

disfigurement, all of which has accrued and is payable forthwith.

A. M. Rothbart, Court Reporting Service, 120 South LaSalle Street, Chicago, Illinois, was employed to take and transcribe the evidence in this case and has rendered a bill in the amount of $24.80. The Court finds that the amount charged is fair, reasonable, and customary and said claim is allowed.

This award is subject to the approval of the Governor as provided in Section 3 of, ''An Act concerning the payment of compensation awards to State employees''.